IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA A. DWYER, | : |
| Plaintiff | : |
| v. | : Civil Action No.  02-CV-4353 |
| ITEQ-INTEGRATED TECHNOLOGIES, INC. | : |
| Defendant | : |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S LEAVE TO RENEW
MOTION TO DISMISS AMENDED COMPLAINT FOR IMPROPER VENUE**

Defendant ITEQ-Integrated Technologies, Inc. ("ITEQ") hereby renews its Motion to Dismiss the Amended Complaint for Improper Venue.[1]  This Memorandum supplements Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Amended Complaint for Improper Venue and incorporates plaintiff Barbara Dwyer's deposition transcript.

**I.    The Venue Standard in Title VII Cases**

Venue in Title VII actions may lie only in the district courts of the State in which (1) the alleged unlawful discrimination is alleged to have been committed; (2) the relevant employment records are maintained and administered; (3) the plaintiff "would have worked but for the alleged unlawful employment practice"; or

---

[1] By its November 12, 2002 Order, this Court gave Defendant leave to renew its motion after the deposition of plaintiff had been completed and filed with the Court.

(4) for purposes of section 1406 of title 28, the judicial district in which the respondent had its principal office.  42 U.S.C. § 2000e-5(f)(3).

**II.    The Facts Applied To The Standard**

Applying the above standard to the facts in this case, it is clear that this judicial district is an improper forum.

1.    <u>State Where Alleged Unlawful Employment Practice Occurred</u>

The Amended Complaint states that the unlawful practice alleged is -- "defendant's action in withdrawing its reimbursement of travel expenses, terminating plaintiff as a full-time employee and, subsequently, entirely terminating her were unlawful discrimination based on her sex and pregnancy." Amended Complaint ¶19.  Plaintiff's deposition testimony establishes that the conversations plaintiff claims she had with Scott Rollison, in which they discussed the withdrawal of reimbursement expenses and her change from full-time to part-time status, occurred in his office in Silver Spring, Maryland. Deposition Transcript (hereinafter "Dep Tr."), attached here as Exhibit "A", p. 166, ln 4-8; p. 171, ln 7 to p.172, ln 23; p.193, ln 2 to p. 194, ln 22.

Plaintiff complained of the following in her deposition:

Q. Would you please describe to me all your claims of discrimination that you have against ITEQ?

A.…In all of my complaints, the only one I had was the fact that I was told that I would be working for the NIST contract, N-I-S-T, National Institute of Standardized Testing…

Q. So that's your only complaint of discrimination, as I understand it from your complaint; is that correct?

    A.  Right . Yes.

    I had no complaints as far as travel expenses or whatever. I mean, I was willing to make other arrangements.

    **My only complaint was I had a contract to work on, and when they found out I was pregnant, they were not interested. So therefore, I had no contract to work on.**

See Id. at p. 40, ln 10 to p. 41, ln 48 (emphasis added).

Plaintiff testified that Mr. Rollison communicated the decision not to place her on the NIST contract as the project manager during a meeting in his office in Silver Spring, Maryland. Id. at p.43, ln 8 to p. 44 ln 4.

    2.    State Where Employment Records Are Maintained And Administered

Plaintiff admitted that ITEQ's employment records are maintained in Maryland. Id. at p. 244, ln 19-21. Further, all communications and decisions regarding Plaintiff's employment status and all work assignments, including the decision to offer her part-time status, originated in ITEQ's Silver Spring, Maryland offices. See the Hill Affidavit, ¶11, attached here as Exhibit "B".

    3.    State Where Aggrieved Person Would Have Worked But For The Unlawful Practice Alleged

By her own testimony, Plaintiff's complaint in this case is that she was not assigned to the NIST project. Dep. Tr. at p. 40, ln 10 to p. 41, ln 48. She admits that, had ITEQ been awarded the NIST contract, she would have been physically working in Gaithersburg, Maryland. Id. at p.243, ln 15-22. She assumed she would be working there five days a week. Id. at p. 243, ln 23 to p. 244, ln18. She also testified that had the NIST contract come to fruition, she would have

3

tried to relocate to Maryland as soon as possible and would have commuted to Maryland daily until she relocated.  Id. at 246, ln 7 to p. 247, ln 7.

Plaintiff cites a decision from the Ninth Circuit Court of Appeals, Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493 (9th Cir. 1999), for the proposition that venue should be found not only where the plaintiff would have worked, but where the plaintiff works[2] **and** the decision to engage in that practice is implemented.  ITEQ never implemented the decision to deny plaintiff the project manager role on the NIST contract because the NIST contract was never awarded, which fact plaintiff does not dispute.[3]

In this case, unlike Passantino, ITEQ did not request or encourage plaintiff to maintain a home office in Pennsylvania.  To the contrary, plaintiff admitted in her deposition that ITEQ's president, Ms. Patricia De Aloia, asked plaintiff to relocate to the Maryland area, several times, well before Plaintiff even notified ITEQ that she was pregnant.  Dep. Tr. at 117, ln 6 and p. 57, ln 11.[4]

---

[2] In Passantino, the Court quoted the following passage that supports ITEQ's position, "Title VII authorizes suit in any judicial district in the State in which the unlawful employment practice is alleged to have been committed" as well as in the district where employment records are kept, **in the district where the plaintiff would have worked but for the unlawful practice,** and, if those provisions fail to provide a forum where the plaintiff would have worked but for the alleged unlawful practice.  Id. at 504 (emphasis added, citation omitted).

[3] Plaintiff was asked, "You're not disputing that they never got that contract right?" and she replied, "I have no knowledge of anything."  Id. at p. 243, ln 10-12.

[4] When asked why it would have made sense to relocate, plaintiff explained,

> Well, obviously, I'd be able to, you know, work on any contract, you know.  I was closer to the corporate office, things like that.
>
> I mean, it would just make it easier so I wouldn't be away from my family and, you know, I could jump from contract to contract like other people do and stuff like that.

Id. at 114, ln 15-22; See also p. 119, ln 19 to p. 120, ln 10. Thus, had plaintiff relocated, there may have been more work for her to perform, in the Maryland area, because she could "bounce

When questioned about work Plaintiff was claiming she should have been assigned, she could identify no projects in Pennsylvania or any other State. Id. at p. 134, ln 12 to p.135, ln 10. The only work she identified other than the Maryland NIST contract, was work she thought might be available after her maternity leave in September or October 2001, which -- by plaintiff's own admission -- was expected to be in Virginia. Id. at 195, ln 17-23.[5] Speculation by plaintiff that she may have or should have been assigned to other job locations thereafter unknown cannot serve as the basis for venue in the Eastern District of Pennsylvania. Rojas v. Trans States Airlines, Inc., 204 F.R.D. 265, 268 (D.N.J. 2001).

4. State In Which Respondent Has Its Principal Office

Plaintiff admitted that ITEQ maintains its principal office in Maryland. Id. at 244, ln 22-23.

**III. Conclusion**

As demonstrated above, the facts show that for each prong of the venue standard, venue in Pennsylvania is improper. Here, the alleged unlawful practice, the failure to assign, was decided and communicated in Maryland as was the decision to change her status from full-time to part-time; the project Plaintiff was allegedly unlawfully denied was indisputably in Maryland; and the

---

from contract to contract". Plaintiff also admitted that she had no problem with ITEQ asking her to relocate and, in fact understood why it made sense. Id. at 115, ln 21- p 116 ln 1.

[5] In fact that contract that was expected never materialized either. Construction on that project is presently projected for 2005.

employment records were maintained and administered in the principal, and sole, office in Silver Spring, Maryland.

When a court finds venue lacking, it can dismiss the case, or if it is in the interest of justice, transfer such case to any district in which it could have been brought.  28 U.S.C. § 1406(a).  Because plaintiff had counsel at the time of her decision to file suit against ITEQ in this district and because the deposition testimony now shows that plaintiff's claims are unsupported, this case should be dismissed rather than transferred.  In any event, venue is unwarranted in this judicial district.

                                        Respectfully submitted,



Dated: _____          _____
                             Daniel J. Brennan, Esquire
                             Attorney I.D. No. 68923
                             Mariellen Bello, Esquire
                             Attorney I.D. No.  60375
                             McAleese, McGoldrick, Susanin
                                & Widman, P.c.
                             Suite 240 – Executive Terrace
                             455 S. Gulph Road
                             King of Prussia, PA 19406
                             (610) 337-4510

## **CERTIFICATE OF SERVICE**

       I, Mariellen Bello, hereby state that I served copies of the foregoing Answers and Affirmative Defenses upon counsel of record on March 26, 2003, by placing same in the U.S. mail, first class postage prepaid, addressed as follows:

>William T. Wilson, Esquire
>MacElree Harvey, Ltd.
>17 West Miner Street
>P.O. Box 660
>West Chester, PA 19381-0660
>
>Attorney for Plaintiff

 

_____
Mariellen Bello